# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ERIN GREEN | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-00432 |
| | § | Judge Mazzant |
| INFOSYS, LTD. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Infosys, Ltd.'s ("Infosys") Motion to Compel Arbitration and Dismiss Plaintiff's Amended Complaint (Dkt. #9). After reviewing the relevant pleadings and motion, the Court finds that the motion should be granted in part.

## BACKGROUND

Plaintiff Erin Green ("Green") is an experienced attorney. Sometime before October 2011, Green sought employment with Infosys. On September 17, 2011, Infosys sent Green an offer of employment via email ("Offer Email"). Plaintiff responded via email on September 19, 2011, that he accepted the offer. Green started with Infosys on October 17, 2011, and signed a Mutual Arbitration Agreement (the "Agreement") in person, as a condition of his employment on October 20, 2011. The Agreement states

> We agree to arbitrate before a neutral arbitrator any and all existing or future disputes or claims between Employee and Infosys, that arise out of or relate to Employee's recruitment, employment or separation from employment with Infosys, . . . including, but not limited to the following claims: . . . claims for discrimination, harassment or retaliation, whether on the basis [of] age, sex, race, national origin, religion, disability or any other unlawful basis.

(Dkt. #9, Exhibit 1 at p. 22). On June 28, 2016, Infosys terminated Green.

On June 19, 2017, Green sued Infosys for (1) depriving him of his equal right to work because of race in violation of 42 U.S.C. § 1981, (2) retaliation based on his complaints of race

discrimination in violation of 42 U.S.C. § 1981, (3) discrimination in violation of 42 U.S.C. § 2000e–1 *et seq.*, and (4) retaliation based on his complaint of race discrimination in violation of 42 U.S.C. § 2000 e–1 *et seq.* (Dkt. #1 at pp. 21–22). Because of the Agreement, on August 18, 2017, Infosys filed its Motion to Compel Arbitration and to Dismiss Green's Amended Complaint (Dkt. #9). On October 2, 2017, Green filed his response, including a Motion to Strike Portions of the Declaration of Rohit Sharma (Dkt. #18). Infosys replied on October 9, 2017 (Dkt. #19). Green filed his reply (Dkt. #20) and an amended sur-reply[1] on October 12, 2017 (Dkt. #21).

## LEGAL STANDARD

"The Federal Arbitration Act ("FAA") expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The FAA, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## ANALYSIS

Plaintiff asks the Court to deny the motion because he argues the FAA does not govern the Agreement, and even if the FAA does apply, the Agreement is not a valid contract. Further, Green asserts that, if the Court agrees that the claims should be arbitrated, it asks the Court to abate the current case as opposed to dismissing it. Finally, Plaintiff asks the Court to strike certain portions of Defendant's supporting evidence. The Court addresses each of Plaintiff's concerns in turn.

---

[1] It appears that Green added an additional footnote to his amended sur-reply. Defendant did not object to the amended sur-reply or ask the Court to strike the amended sur-reply. Accordingly, the Court will accept the amended sur-reply in this case.

1. **The Governance of the FAA**

Green argues that the FAA does not govern the transaction because Infosys did not prove that any commerce is involved. Infosys maintains that because this is an employment contract, it falls under the umbrella of the FAA's broad interpretation of commerce. Infosys further asserts that Plaintiff's own complaint demonstrates that he frequently traveled throughout the United States while working for Infosys, which proves that commerce is involved in the transaction.

The FAA is applicable to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. The FAA defines commerce as "commerce among the several States or with foreign nations. . . ." 9 U.S.C. § 1. Additionally, the Supreme Court further interpreted the phrase "involving commerce" as "the functional equivalent of 'affecting,' . . . [which] signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274, 277 (1995). The Supreme Court also interpreted "evidencing a transaction" to mean that the transaction turns out, in fact, to have involved interstate commerce. *Id.* at 277–81. Moreover, the Supreme Court explained "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001).

Here, Green signed the Agreement as a condition of his employment, which required him to bring claims arising out of his employment to an arbitrator. Green was not an employee engaged in transportation, but instead was hired as a Practice Lead of Global Immigration and was promoted to Head of Global Operations for Infosys. Green traveled throughout the United States as part of

his employment. There is no question that this contract evidences a transaction involving commerce.[2]

This case presents similar facts to those seen in *Rodriguez v. Xerox Business Services, LLC*. 2017 WL 1278714, at *1 (W.D. Tex. Feb. 19, 2017). In *Rodriguez*, as a condition of her employment, the plaintiff signed an agreement to be bound by the defendant's dispute resolution plan, which required the plaintiff to bring all personal injury claims arising out of her employment to an arbitrator. *Id.* The plaintiff argued that because she was not engaged in interstate commerce at the time of her injury, the FAA did not govern. *Id.* at *4. The court rejected this argument and explained, "[because] the FAA extends to employment contracts, Plaintiff's arguments against application of the FAA necessarily fail." *Id.* at *5. Similarly here, the FAA applies and governs the Agreement.

**2. Compelling Arbitration**

The Court now turns to the issue of whether it should compel arbitration based on the Agreement. When considering a motion to compel arbitration, the Court must address two questions. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (citing *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement." *Id.*

---

[2] The Court additionally notes that the Agreement itself states, under the title "Governing Law,": "[t]he parties agree that Infosys is engaged in transactions involving interstate commerce. We understand that this is an agreement to arbitrate under the Federal Arbitration Act." (Dkt. # 9, Exhibit 1 at p. 15). Even though Green challenges the Agreement's validity, the Agreement supports the finding that the Agreement is governed by the FAA because, as will be further discussed below, the Court is unpersuaded by Green's argument that the Agreement is not a valid contract.

### A. Valid and Enforceable Agreement

Concerning the first question of contract validity, the Court should apply "ordinary state-law principles that govern the formation of contracts." *Id.* at 222 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "In applying state law, however, due regard must be given to the federal policy favoring arbitration." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). The Court finds that Texas contract law applies to the case.[3] Under Texas law, a binding contract exists when each of the following elements are established: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) a communication that each part consented to the terms of the contract; (5) execution and delivery of the contract with the intent that it be mutual and binding; and (6) consideration. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).[4]

Infosys argues that the Agreement between the parties is valid and binding. Infosys maintains that it sent Green the Offer Email that attached the Agreement and an offer letter (the "Offer Letter"), which expressly stated his employment was contingent on him signing the Agreement (Dkt. #9, Exhibit 1 at pp. 6, 10). Infosys contends Green responded to the Offer Email accepting the Offer Letter, which included the requirement that he sign the Agreement. Finally, Defendant claims that, once Green arrived at Infosys, Green signed the Agreement in person.

---

[3] Neither party disputes that Texas law should apply. Plaintiff's employment for Defendant was located in Plano, Texas, and he has alleged defenses to the Agreement using Texas contract law. Additionally, the Agreement states: "GOVERNING LAW," "this Agreement and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the law of the state where Employee works or worked at the time the arbitrable dispute or claim arose." (Dkt. #9, Exhibit 1 at p. 15). Therefore, the Court finds that Texas "has [a] substantial relationship to the parties" or "application of the law of [Texas] would [not] be contrary to a fundamental policy of a state which has a materially greater interest than [Texas]." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015).

[4] The Court notes that some courts do not list "communication of consent to the terms" as an element of a valid contract and discuss such element as part of "a meeting of the minds." *See, e.g., Frozard v. C.R. Eng., Inc.*, 243 F. Supp. 3d 789, 794 (N.D. Tex. Mar. 17, 2017) (citations omitted) (holding "[i]n Texas, a valid contract requires an 'offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration.'"). Because Green argues that there is no "voluntary assent," as will be addressed later, the Court uses the line of cases that list "communication of consent to the terms" as a separate element.

Therefore, Infosys states that all essential elements are met and that the parties formed a valid and enforceable contract.

Green first responds that he never received an email containing attachments. Therefore, Green claims the first time he saw the Agreement was the day he was forced to sign it. Green admits that he signed the Agreement, but argues that he did so only after he had already worked three days for Infosys, after he was threatened with termination, and after he spent $10,000 moving 1,200 miles from Canada to Texas with his wife, toddler, and infant. Green maintains that he believed if he did not sign the Agreement, he would have been fired and would not have received a reimbursement for his moving expenses. As such, Green argues that there is not a valid agreement because he did not voluntarily assent to the Agreement, which Green avers is a required element for a valid contract.

Infosys counters that Green received notice of the Agreement, on multiple occasions, before starting his employment: (1) in his application process; (2) in the Offer Letter; and (3) in the attachments to the Offer Email. Moreover, Infosys argues that even if Green did not receive any notice prior to starting work, that fact is irrelevant because an at-will employer can present an arbitration agreement to its employees at any time during the employment. Further, Infosys maintains that at-will employers are also permitted to condition employment on the signing of an arbitration agreement.

The Court agrees that any evidence and argument regarding notice prior to Green arriving at work is irrelevant. *See In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). As such, even if the Court accepts Plaintiff's allegations regarding the Offer Email, Offer Letter, and attachments, as true, such allegations do not affect the validity of the Agreement. Plaintiff has not provided the Court with any case law, nor has the Court found any, that requires a party signing a contract to

have a certain amount of time to review the contract. Likewise, Green has not provided the Court with any case law to suggest that an employee signing an arbitration agreement as a condition of employment must have notice of such agreement prior to starting his employment. In fact, the converse is true. The Texas Supreme Court held that an at-will employer may, at any time during employment, change the terms of the at-will employment. *Id.* (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227 (Tex. 1986)). In order to modify the terms of the employment, the at-will employer must prove two things: "(1) notice of the change; and (2) acceptance of the change . . . 'to prove notice an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Id.* (quoting *Hathaway*, 80 S.W.2d at 229). Neither party here disputes that Inofsys notified Green of the Agreement once Green arrived at Infosys, the alleged modification to Green's employment. Further, Green accepted the terms of the Agreement, if not by his signature, by "continu[ing to] work[] with knowledge of the changes." *Id.* (quoting *Hathaway*, 80 S.W.2d at 229). Accordingly, even if Defendant did not give notice of the Agreement prior to the start of his employment, Infosys properly modified the terms of the employment. Therefore, whether Green received notice before starting his employment is immaterial.

As to Plaintiff's claim that there is no "voluntary assent," the Court addresses such argument by looking at elements three and four of Texas contract formation: (3) a meeting of the minds and (4) mutual consent to the terms.[5] "A 'meeting of the minds' is a mutual understanding and assent to the expression of the parties' agreement. Mutual assent concerning material,

---

[5] To support his claim that "voluntary assent" is an essential element of contract formation, Green cites two cases: a Texas case from 1931 and a case from Louisiana. (Dkt. #18 at p. 5 (citing *Langer*, 44 S.W.2d at 1051; *Nunez*, 2007 WL 2008105, at *6–7)). As Texas law applies, the case from Louisiana is not persuasive for Texas contract formation. Further, as to the Texas case from 1931, case law changes and adapts over time. As is demonstrated by the contract elements the Court previously listed, "voluntary assent" is not an essential element of contract formation, even if it was required in 1931. From the current state of the elements for contract formation, Green's argument fits best into either element three or four.

7

essential terms is a prerequisite to the formation of a binding contract." *BoRain Capital, LLC v. Hashmi*, 533 S.W.3d 32, 36 (Tex. App.—San Antonio 2017, pet denied) (citing *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet denied)). However, "[t]he determination of whether there was a meeting of the minds must be based on objective standards of what the parties said and did and not on their alleged subjective states of mind." *In re Hudgins*, 188 B.R. 938, 942 (Bankr. E.D. Tex. 1995) (citing *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 717 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Slade v. Phelps*, 446 S.W.2d 931, 933 (Tex. Civ. App.—Tyler 1969, no writ)). As such, "when parties enter into an agreement based on a writing that is not ambiguous, the [C]ourt will give effect to the parties' intention as expressed in the writing". *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005).

Accordingly, "[m]utual assent, and '[e]vidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind.'" *Lyda Swinerton Builders, Inc. v. Ok. Surety Co.*, 877 F.3d 600, 611 (5th Cir. 2107) (quoting *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 635, 635 (Tex. 2007)). Further, evidence of signing the contract is generally sufficient to show that the parties consented to the terms in the contract. *See Cont'l Cas. Co. v. R.B. Contracting Co., L.P.*, No. 3:09-CV-2485, 2011 WL 13229425, at *4 (N.D. Tex. Mar. 14, 2011) (holding "[t]he execution of the Indemnity Agreement is also evidence of a meeting of the minds, each party's consent to its terms, and intent that it be mutual and binding.").

Here, the uncontroverted evidence demonstrates that the Agreement is a written contract. Neither party has pointed to any ambiguity in the Agreement. Both Green and Richard Lobo, Associate Vice President-HRD for Infosys, signed the Agreement. Green received a copy of the Agreement. Using an objective standard, as the Court is required to do, Green's outward actions express acceptance and his intention as expressed in writing is to be bound by the Agreement. *In*

*re McKinney*, 167 S.W.3d at 835. Therefore, Green's contention that he did not subjectively voluntarily agree to the terms of the Agreement, does not negate his outward acceptance of the Agreement. *See id.* As such, "there is no doubt that [the Agreement] was properly executed, delivered, and acted upon as an agreement." *Hamed v. Fry's Elecs., Inc.*, No. 4:17-CV-00675, 2017 WL 6325611, at *3 (E.D. Tex. Dec. 11, 2017) (citing *Garcia v. Villareal*, 478 S.W.2d 830, 832 (Tex. App.—Corpus Christi 1971, no writ)). As such, because the Agreement was signed and accepted by Plaintiff, the Agreement is valid and enforceable. *Id.*[6]

### B. Scope of the Agreement

The second step of the Court's analysis is to determine the arbitration clause's scope by applying the federal substantive law of arbitrability. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

The Agreement states that it applies to claims arising out of Green's employment, "including, but not limited to the following claims: . . . claims of discrimination, harassment or retaliation, whether on the basis [of] age, sex, race, national origin, religion, disability or any other unlawful basis." (Dkt. #9, Exhibit 1 at p. 12). All of Green's claims arise out of his employment with Infosys. Green does not contest that his claims fall within the scope of the Agreement. As such, the Court finds that the causes of action are covered under the scope of the Agreement. *See Hamed*, 2017 WL 6325611, at *3.

---

[6] In an explanatory parenthetical in Green's response, Green impliedly raised the defense of duress. Accordingly, in its reply, Infosys addressed duress; however, Green clarified in its response that it is not asserting a defense of duress in this case. As such, the Court does not engage in an in-depth analysis of the defense of duress. If the defense had been raised, the Court would not find it persuasive because, as the Court has noted in the past "an employer may make 'a take it or leave it offer to [its] at-will employees.'" *See, e.g.*, *Jefferson v. Fannie Mae*, No. 4:13-cv-604, 2016 WL 5339702, at *8 (E.D. Tex. July 29, 2016), *report and recommendation adopted by*, 2016 WL 5118643 (E.D. Tex. Sept. 21, 2016).

### 3. Request to Abate

Infosys argues that the Court should dismiss the case with prejudice since all of Green's claims are arbitrable. Green counters that the Court should stay proceedings pending the outcome of arbitration.

A court may dismiss a case with prejudice when "all of the issues raised in the district court must be submitted to arbitration." *Alford*, 975 F.2d at 1164. As previously discussed, all of the causes of action fall within the scope of the Agreement. Nevertheless, the Court has discretion to stay the case pending arbitration rather than dismiss it. *Id.* The Court will grant Plaintiff's request to stay proceedings pending the outcome of the arbitration. 9 U.S.C. § 3.

### 4. Motion to Strike

Plaintiff requests that the Court strike Paragraph Five of Rohit Sharma's declaration ("Sharma's declaration"), evidence Infosys used to support its motion to compel. It reads:

> Infosys extended an offer of employment to Plaintiff via letter dated September 16, 2011 ("Offer Letter"). The Offer Letter expressly informed Plaintiff that he would be required to sign a Mutual Arbitration Agreement ("Agreement") as a condition of beginning his employment. The Offer Letter also stated it enclosed a copy of that Agreement. The [Offer] Letter was transmitted to Plaintiff via email on September 17, 2011.

(Dkt. #9, Exhibit 1 at p. 2). Further, Plaintiff requests that the Court strike a sentence in Paragraph Eleven stating that, "if Plaintiff had refused to sign the Mutual Arbitration Agreement, his offer of employment would have been withdrawn." (Dkt. #9, Exhibit 1 at p. 2). Because neither of these statements had any effect on the Court's analysis in this case, Green's request is denied as moot.

Green also asks the Court to strike Paragraph Ten of Sharma's Declaration, which states "[a] true and correct copy of the Agreement bearing Plaintiff's signature dated October 20, 2011 is attached hereto as Exhibit F." (Dkt. #9, Exhibit 1 at p. 2). Green claims that this statement is "necessarily knowingly false" because he never received the email with the attachments and that

the Agreement contained in the email and the Agreement that Plaintiff signed were different documents (Dkt. #18 at p. 3).  However, looking to the statement made in Paragraph Ten, it only states that Exhibit F is a true and correct copy of the Agreement that Green signed on October 20, 2011, which is the Agreement he signed in person after starting his employment with Infosys. Therefore, Plaintiff's argument that the copy sent in the email and the copy he signed are different, bears no weight on whether Exhibit F is a true and correct copy of the Agreement he signed once Green started his employment.  Thus, the Court denies Green's request to strike Paragraph Ten of Sharma's declaration.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Amended Complaint (Dkt. #9) is hereby **GRANTED IN PART**.  The case is **STAYED** pending arbitration.  Further, the Court does not strike any part of Sharma's Declaration.

**SIGNED this 26th day of February, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE